No. 82-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

IN RE THE MARRIAGE OF

PATRICIA McCONNELL-CHEREWICK,

                    Petitioner and Respondent,

    -vs-

THOMAS ANDREW CHEREWICK,

                    Respondent and Appellant.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        W. Corbin Howard, Billings, Montana

    For Respondent:

        Davidson, Veeder, Baugh, Broeder, Poppler &
        Michelotti; Doris M. Poppler, Billings, Montana

_____

                        Submitted on Briefs:  April 15, 1983

                                    Decided:  July 13, 1983

Filed:  JUL 1 3 1983

_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Thomas Andrew Cherewick, the husband in a dissolution proceeding, appeals from a final decree of dissolution granting custody of the minor child of the parties to the wife, Patricia McConnell-Cherewick, and an order denying Thomas's motion for a new trial and amendment of the findings of fact and conclusions of law entered by the District Court of the Thirteenth Judicial District, Yellowstone County.

The parties were married on June 15, 1974. Patricia was 22 years of age, Thomas was 27. One child, Tiffany, was born of the marriage on August 6, 1980. Both parties are well educated and pursuing careers. After the child was born, Patricia remained at home for a short period of time. Thereafter, Patricia took Tiffany to work with her for about six months before the parties placed her in a day care center. The primary care of the child remained with Patricia until she moved from the family home. The parties then shared care of Tiffany until a psychiatrist, Marian Martin, recommended that Thomas retain primary care and allow Patricia visitation until completion of the dissolution proceeding.

After a hearing, the District Court granted custody of Tiffany to Patricia and allowed Thomas reasonable liberal visitation. The District Court refused to allow joint custody because of the hostility that had developed between the parties. The District Court entered the final decree on August 12, 1982. Thomas filed a combined motion for new trial and for amendment of the findings of fact and conclusions of law. Thomas's motion was heard and deemed denied

by the District Court's failure to act. Thomas filed notice of appeal. We affirm the order of the District Court in all respects.

The issues presented in this case are:

1. Whether the District Court erred in refusing to admit into evidence Thomas's proposed exhibit "N," a letter from Patricia to her father.

2. Whether the District Court erred in refusing to grant a new trial or amend its findings of fact and conclusions of law upon the ground of newly discovered evidence.

3. Whether the District Court erred in awarding custody of the minor child of the parties to Patricia.

The first issue is whether the District Court properly excluded Thomas's proposed exhibit "N," a letter written by Patricia to her father. The letter was a private communication. There is no evidence presented suggesting that the letter was completed or sent. Thomas found the letter and photocopied it for use at a later date. Thomas objects to the statement in the letter that, "My lawyer is in cahoots with the psychologist- They are setting Tom up very smart- They will make me look super good."

The District Court originally excluded the exhibit as irrelevant and later excluded it when used to impeach the witness. Thomas contends the exhibit contradicts Patricia's testimony at the hearing and had bearing on her credibility.

Rule 401, Mont.R.Evid., provides:

> "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant."

The test of relevance is:

> ". . . whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. The standard used to measure this acceptable probative value is 'any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence.'" State v. Fitzpatrick (1980), ____ Mont. ____, 606 P.2d 1343, 1354, 37 St.Rep. 194, 207.

The District Court has broad discretion to determine whether or not the evidence is relevant. Without a showing that the District Court has abused its discretion, this Court will not overturn the District Court's determination of relevancy. State v. Close (1981), ____ Mont. ____, 623 P.2d 940, 38 St.Rep. 177.

The letter was a private communication that was not completed or delivered to the intended receiver. The District Court allowed Patricia to testify as to the contents of the letter. The Court had the opportunity to see the witness and determine whether the evidence was relevant as to the truth of the statements made and her credibility. We find no evidence in the record to indicate that the District Court abused its discretion in excluding the evidence.

The second issue is whether the District Court erred in refusing to grant a new trial or amend its findings of fact and conclusions of law upon the ground of newly discovered evidence.

Thomas asserts the newly discovered evidence is the evidence that Patricia's back yard is not fenced and is bounded by a ditch.

There was evidence presented at the hearing that Patricia lived with another woman who had two children. The

-4-

children got along well and enjoyed each other's company. They were living in a large house at the time of the hearing. Thomas presents no evidence to show that Tiffany and Patricia have moved from this home. The evidence of whether the yard was fenced was available at the time of the hearing:

> "Q. What type of yard does your present home have?  A. [Patricia]  We have approximately a half acre.  It's enclosed with a fence on one side, a hedge is on the other side.  And I take very good to watch her when we are outside.  There is a swing, also, in the back for her."

We have stated the guidelines for determining whether a new trial is justified:

> "1.  The alleged 'newly discovered' evidence came to his knowledge after the trial;
>
> "2.  It was not a want of diligence which precluded its earlier discovery;
>
> "3.  The materiality of the evidence is so great it would probably produce a different result on retrial; and,
>
> "4.  The alleged 'new evidence' is not merely cumulative, not tending only to impeach or discredit witnesses in the case."  Kartes v. Kartes (1977), 175 Mont. 210, 214-215, 573 P.2d 191, 194.

With regard to Patricia's yard, it is clear that the evidence was available at the time of the hearing and could have been ascertained through simple discovery.  In fact, Patricia testified to the fact that the yard was not completely fenced.  No other evidence was presented showing that the yard was fenced.  While the District Court did state that the yard was fenced, this oversight was not significant to warrant reversal.  Therefore, the assertion that this "discovery" warrants a new trial is without merit.

Thomas additionally asserts that after the hearing on

-5-

August 2, 1982, Patricia took Tiffany from the day care center for a day. Because of this evidence, Thomas asserts he is entitled to a new trial because Patricia was not co-operating with the planned schedule. Again, we do not find this evidence sufficient to warrant a new trial. Furthermore, the District Court did not establish a visitation schedule until August 10, 1982. Thomas admits that he was informed by the couple who manage the day care center that Tiffany was with her mother. He therefore did not fear for her safety. There is no merit to the contention that this "newly discovered" evidence justifies a new trial.

Thomas finally argues that a new trial was justified by the fact that Dr. Joseph Rich, a psychiatrist who had counselled both parties prior to the dissolution of their marriage, decided to testify. Dr. Rich refused to testify at the original hearing because the parties agreed that the information obtained by Rich in counseling would not be used in court. However, he was later willing to testify about counseling sessions he had had alone with Thomas and to state his objections about Marian Martin's statements regarding Thomas's anger.

Dr. Rich was available at the time of trial and could have been subpoenaed by Thomas. The evidence did not come to the knowledge of Thomas after the trial and there was want of diligence by Thomas as to the testimony of Rich. The materiality of the evidence was not so great as to produce a different result by the District Court. Therefore, we are not persuaded by this argument. The District Court did not abuse its discretion by denying Thomas a new trial.

Furthermore, with regard to the newly discovered

evidence, we do not find the findings of the District Court on this "newly discovered" evidence to be clearly erroneous. Rule 52(a), M.R.Civ.P.

The third issue raised on appeal is whether the District Court erred in ordering custody of Tiffany to Patricia. Thomas contends the District Court failed to set forth all the reasons for the custody determination as required by section 40-4-212(3), (4), MCA.

Section 40-4-212, MCA, provides:

> "Best interest of child. The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custody;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school, and community; and
>
> "(5) the mental and physical health of all individuals involved."

Thomas asserts the District Court failed to make the necessary findings by "ignoring" evidence he had submitted. He argues that the District Court made no findings regarding the specific relationship between the parties. He further asserts the District Court failed to make the necessary findings regarding Tiffany's adjustment to her home and community. The District Court found:

> "The Court has considered all appropriate factors on custody as follows:
>
> "1. Both parties seek sole custody.

-7-

"2. From the evidence, it is apparent that the child is well-adjusted and although experiencing the stress of her parents' separation and divorce, is developing normally.

"3. All parties enjoy excellent mental and physical health. However, Dr. Marian Martin recommends that both parties seek counseling and take a 'parenting course'.

"That it would be in the best interests of the minor child of the parties to be placed in the care, custody and control of the petitioner and that respondent have reasonable liberal rights of visitation. The Court bases this finding upon the fact that joint custody works only if the parties are able to communicate freely and work well together, and share the responsibilities without rancor. Testimony of the parties and observed open hostility of the parties in the courtroom raises doubt that the parties can agree on substantial matters well enough for joint custody to work well, and the age of the child is such that one domicile would give her more security emotionally. The testimony of the parties does not indicate that respondent shared child-rearing responsibilities and home-maker duties equally with petitioner. It is clear that petitioner bore those responsibilities prior to the separation. The testimony further showed that the present living arrangements of the petitioner are more desirable for a young female child as testimony showed the family home is located in a remote section of the city, with no near neighbors or children to play with, that the home does not have a yard or fenced enclosure for her to play in and that petitioner's home is well suited for the needs of the child, with a large fenced yard, and other children nearby.

"Although Dr. Martin's recommendation was to place primary custody with the father, testimony was clear that the father was rather inflexible in allowing the mother frequent visitation and that the father sometimes has used the child's visitation as an outlet for his bitterness and hostility toward the mother for divorcing him. Dr. Taylor testified that most of the five counseling sessions had dealt with respondent's bitterness toward petitioner and had to be directed toward his relationship with the child. Petitioner

-8-

> testified that she would cooperate fully
> with the court's custodial arrangements
> if she were given custody. Witness Diane
> Girardot testified of her personal obser-
> vation of petitioner's child-rearing
> abilities and the home environment and
> that same was excellent."

The function of this Court in reviewing findings of fact in a civil action tried by the District Court without a jury is not to substitute its judgment in place of the trier of facts but rather is confined to determining whether there is substantial credible evidence to support the findings of fact and conclusions of the District Court. Cameron & Jenkins v. Cameron (1978), 179 Mont. 219, 587 P.2d 939.

Each party had the opportunity to present evidence. Several experts and friends were called and the District Court heard extensive testimony on both sides.

The District Court had the opportunity to view the witnesses and evaluate their testimony. The District Court is not obligated to outline all of the testmony presented at trial in its findings of fact. The District Court properly supported its custody determination. There was substantial credible evidence presented at the hearing to support the findings and conclusions of the District Court with regard to the custody determination.

The judgment of the District Court is affirmed.

_John C. Sheehy_
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-