No. 96-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

KEITH WARREN SMITH,

Plaintiff and Appellant,

v.

ST. VINCENT HOSPITAL; GARY MUNDY, M.D.,
THOMAS P. THIGPEN, M.D., FREDERICK W.
KAHN, RONALD E. BURNAM, M.D., HOYLE E.
SETZER, M.D., JOHN DOE; JANE DOE,



FILED

MAY 29 1997

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Keith Warren Smith, Pro Se, Roundup, Montana

        For Respondents:

        Robert C. Brown; Poore, Roth & Robinson, Butte, Montana

        James E. Aiken, Sue Ann Love; Jardine, Stephenson, Blewett & Weaver,
        Great Falls, Montana

        Richard F. Cebull; Brown, Gerbase, Cebull, Fulton, Harman & Ross,
        Billings, Montana

                                        Submitted on Briefs: March 6, 1997

                                        Decided: May 29, 1997

Filed:

_____
                                Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Keith Warren Smith (Smith), appearing *pro se*, appeals from the judgments entered by the Thirteenth Judicial District Court, Yellowstone County, on its underlying orders granting summary judgment in favor of St. Vincent Hospital and the individual defendants and from numerous pretrial orders relating to discovery, amendment of pleadings and disqualification of the district court judge. We affirm.

We address the following issues on appeal:

1. Did the District Court abuse its discretion in imposing Rule 11 sanctions against Smith?

2. Did the District Court err in denying Smith's motion to disqualify the Honorable Russell C. Fagg?

3. Did the District Court err in granting summary judgment on behalf of each of the defendants?

Smith filed a medical negligence action against most of the doctors who treated him from August 27, 1989, through October 31, 1989, as well as against St. Vincent Hospital (collectively, Defendants). He subsequently moved to amend his complaint to join his wife

2

as a co-plaintiff and the District Court granted Smith's motion, conditioned on Smith's wife first meeting the requirements of § 27-6-701, MCA, by presenting her potential claims to the Montana Medical Legal Panel (MMLP). Smith's wife did not meet the court's condition for joinder and, therefore, did not become a party to this action.

Smith inundated the District Court with motions and pleadings. Defendants ultimately filed motions for summary judgment and discovery was conducted by all parties. The District Court granted Defendants' motions. Smith appeals.

1. Did the District Court abuse its discretion in imposing Rule 11 sanctions against Smith?

In September of 1995, the District Court imposed sanctions against Smith, pursuant to Rule 11, M.R.Civ.P., based on its finding that Smith's motion entitled "Plaintiff [sic] First Motion for Judicial Notice of Fact and Law, of Bad Faith, Annoyance, Embarrassment, and Oppression . . ." (motion for judicial notice) and portions of his motion entitled "Co-Plaintiff's Motion to Proceed In Forma Pauperis" (motion to proceed in forma pauperis) were frivolous and without merit. Those sanctions included awarding Defendants their costs and attorneys' fees incurred in pursuing Rule 11 sanctions in response to Smith's motion for judicial notice; awarding Defendants their costs and attorneys' fees for responding to Smith's motion to proceed in forma pauperis; striking Smith's motion for judicial notice from the record; and requiring Smith to request leave of the court to file further documents. The District Court stated that the purpose of the latter sanction was to eliminate the filing of frivolous documents by Smith.

3

Smith argues on appeal that the sanctions imposed were excessive. In particular, he contends that requiring him to obtain leave of court prior to filing additional documents placed an "unfair and burdensome disadvantage" on him.

The purposes of Rule 11, M.R.Civ.P., are to discourage dilatory tactics, help streamline the litigation process by lessening frivolous claims or defenses, and deter the use of wasteful and abusive tactics by punishing such tactics. D'Agostino v. Swanson (1990), 240 Mont. 435, 444, 784 P.2d 919, 925. Sanctions are required where an attorney or party files a document which is frivolous--that is, not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law--or where a document is filed for an improper purpose such as harassment, delay or increasing the cost of litigation. See Rule 11, M.R.Civ.P.; D'Agostino, 784 P.2d at 925. Here, as indicated above, the District Court's sanctions were based on its finding that Smith had filed frivolous documents.

District courts have wide latitude in determining whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics requiring the imposition of Rule 11 sanctions. D'Agostino, 784 P.2d at 926. We will overturn a district court's findings on such matters only where clearly erroneous; a district court's conclusion that the facts constitute a Rule 11 violation will be reversed only if an abuse of discretion is established. D'Agostino, 784 P.2d at 926. The type of sanction imposed for a Rule 11 violation is within the district court's sound discretion. D'Agostino, 784 P.2d at 926.

Smith's motion for judicial notice, which incorrectly included his wife as co-plaintiff, purportedly was made pursuant to Rule 30(d), M.R.Civ.P. It was based on alleged events surrounding Defendants' deposition of Smith and his wife and alleged, specifically, that Defendants' counsel deliberately and deceptively failed to inform him of the building's access ramps and that Smith suffered muscle cramps from having to bring documents through the front entrance of the law office as a result.

Rule 30(d), M.R.Civ.P., clearly does not provide for the type of motion filed by Smith here. Rule 30(d) allows a party to make a motion *during the taking of the deposition* that the deposition itself is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party; the relief available is an order either limiting or terminating the examination and an award of expenses incurred in making the motion. See Rule 30(d), M.R.Civ.P. Here, Smith's motion was neither made during the deposition nor premised on conduct by Defendants during the deposition. Nor did Smith seek any relief beyond an order taking "judicial notice" of the allegations in his motion.

Smith's motion to proceed in forma pauperis also named Smith's wife as co-plaintiff. Smith requested the court to waive not only his court costs and fees, but also costs for photocopying; costs for discovery, including but not limited to expert witness fees; court reporter fees; costs for deposing experts; fees for any appeals in the action; and "[a]ll other costs and fees, associated with Co-Plaintiffs [sic] cause of action, whatsoever." It is clear

5

that § 25-10-404, MCA, authorizes a waiver of court fees only and, therefore, that the remainder of Smith's motion to proceed in forma pauperis was unauthorized by Montana law.

The record in this case reflects that the District Court had been inordinately patient with Smith, allowing him leeway as a *pro se* litigant, up to the time the Defendants requested--and the court imposed--sanctions. The record also reflects a pattern by Smith of filing documents failing to conform to the Montana Rules of Civil Procedure, filing documents not well grounded in fact or law and ignoring the District Court's warnings regarding Smith naming his wife as co-plaintiff in documents. A trial court need not continue to tolerate abusive and frivolous litigation practices which waste the time and resources of the opposing parties and the court.

Based on our review of the record, we conclude that the District Court did not abuse its discretion in determining that sanctions were appropriate or in crafting the specific sanctions imposed.

2. Did the District Court err in denying Smith's motion to disqualify the Honorable Russell C. Fagg?

On September 7, 1995, Smith moved to disqualify District Court Judge Russell C. Fagg from this case pursuant to § 3-1-805, MCA, alleging that "numerous incidents" had resulted in him losing "any hope in impartial judgment." Specifically, Smith was dissatisfied with the order requiring his wife to present her claims to the MMLP prior to being joined as a party and the imposition of sanctions.

6

We appointed the Honorable Joe L. Hegel to preside over a hearing on Smith's motion to disqualify. Judge Hegel scheduled a hearing and gave Smith time to supplement his motion with an affidavit alleging facts constituting evidence of prejudice or bias by Judge Fagg. Following the hearing, Judge Hegel denied Smith's motion to disqualify Judge Fagg on the basis that the record was devoid of any evidence indicating personal bias or prejudice by Judge Fagg. Smith argues on appeal that Judge Hegel erred.

Section 3-1-805, MCA, provides for the disqualification of district court judges for cause. The statute requires the party seeking to disqualify a judge to file an affidavit alleging facts which show personal bias or prejudice by the presiding judge; the affidavit cannot be based solely on rulings in the case made by the challenged judge and from which an appeal could be taken. See § 3-1-805, MCA.

Here, the record reflects that Smith failed to allege any facts which indicate personal bias or prejudice by Judge Fagg. His motion and arguments to Judge Hegel centered almost entirely on rulings by Judge Fagg from which an appeal ultimately could be taken. As noted, a § 3-1-805, MCA, motion to disqualify cannot be based on a party's dissatisfaction with rulings in the case.

Judge Hegel noted that Smith believed Judge Fagg was prejudiced against him because he was proceeding *pro se*. As noted above, the record is clear that Judge Fagg exercised patience with Smith and attempted to explain the requirements of litigation. Judge Hegel found, and we agree, that

7

Judge Fagg has not ruled against Mr. Smith because of his *pro se* status, but because, even after numerous explanations and warnings, Mr. Smith either will not or cannot distinguish between what is allowed under the law and what is not allowed under applicable law.

Smith failed to allege facts demonstrating personal bias or prejudice by Judge Fagg. Accordingly, we conclude that Judge Hegel properly denied Smith's motion to disqualify Judge Fagg pursuant to § 3-1-805, MCA.

3. Did the District Court err in granting summary judgment on behalf of Defendants?

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment *de novo*, applying the same Rule 56(c) criteria initially used by that court. Brinkman & Lenon v. P & D Land Enters. (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114 (citation omitted). Only where the moving party satisfies its initial burden of establishing the absence of a genuine issue of material fact does the burden shift to the party opposing summary judgment. Matter of Estate of Lien (1995), 270 Mont. 295, 298, 892 P.2d 530, 532 (citation omitted).

The plaintiff in a medical malpractice action ordinarily must produce expert medical testimony regarding the standard of care and the defendant's deviation from that standard. See Estate of Nielsen v. Pardis (1994), 265 Mont. 470, 473, 878 P.2d 234, 235-36 (citations omitted). The plaintiff must also be able to show that the breach of duty--that is, the

deviation from the standard of care--caused the plaintiff's injuries. Montana Deaconess Hospital v. Gratton (1976), 169 Mont. 185, 190, 545 P.2d 670, 672.

Here, Defendants moved for summary judgment based on Smith's failure to identify an expert witness who would testify as to the hospital's and individual doctors' standard of care, deviation from that standard and causation. The District Court determined that Smith's expert witness disclosure failed to indicate that he could establish a prima facie case of medical malpractice and, as a result, it granted summary judgment in favor of Defendants. Smith contends on appeal that genuine issues of material fact exist. We disagree.

In response to Defendants' interrogatories, Smith identified two expert witnesses, Drs. Gilbert A. Preston and Lawrence A. Cone, and provided written reports from each. Smith subsequently advised the District Court that Dr. Preston was a "hostile" expert witness who did not want to provide expert witness testimony on Smith's behalf. The court informed Smith that Dr. Preston could not be forced to serve as an expert and properly refused to consider Dr. Preston's written report in resolving this issue.

Dr. Cone's report did not set forth the applicable standard of care or state that any of the Defendants deviated from such a standard. With regard to causation, and even assuming arguendo that a deviation from the standard of care existed, Dr. Cone noted that Smith "required valve replacement, which he probably would have needed anyway. . . ." We conclude that Defendants met their burden by establishing that no genuine issues of material fact existed and that they were entitled to judgment as a matter of law because Smith did not

9

establish a prima facie case of medical malpractice through his medical expert; he did not establish the applicable standard of care, Defendants' deviation from that standard or that any such deviation caused Smith to require valve replacement.

Smith argues that affidavits he prepared and Dr. Cone signed, which were submitted approximately forty-eight days after the deadline for such disclosures, demonstrate that genuine issues of material fact exist with regard to his medical malpractice claims against Drs. Burnam and Thigpen. The District Court determined that the untimely affidavits were not properly before it and that, even considering the affidavits, Smith still failed to raise a genuine issue of material fact regarding causation. We agree and, because it is clear that the affidavits were untimely and that no good cause was shown for Smith's failure to comply with the deadline which had already been extended by more than seven months, decline to address the affidavits further.

Finally, Smith argues that genuine issues of material fact exist because Defendants pleaded the affirmative defense of comparative negligence. This argument is without merit. Comparative negligence would only become an issue in the event Smith established a prima facie case of medical malpractice against Defendants. As already discussed, he failed to do so. We hold that the District Court did not err in granting summary judgment in favor of Defendants.

10

Smith raises numerous other "issues" which either fail to assert specific error, are not supported by relevant authority or, given our conclusion above, would not affect Smith's substantial rights even if error were found. We decline to address such "issues."

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11